# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| WATERLEGACY, FOND DU LAC BAND OF LAKE SUPERIOR CHIPPEWA, GRANT PORTAGE BAND OF LAKE SUPERIOR CHIPPEWA, and MINNESOTA CENTER FOR ENVIRONMENTAL ADVOCACY, | Civil No. 13-1323 (JRT/LIB) |

Plaintiffs,

**MEMORANDUM OPINION AND ORDER**

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY REGION 5, SUSAN HEDMAN, *in her official capacity as Administrator of the United States Environmental Protection Agency Region 5*, GINA MCCARTHY, *in her official capacity as Acting Administrator of the United States Environmental Protection Agency*,

Defendants.

and

MESABI NUGGET DELAWARE, LLC,

Intervenor.

---

Paula G. Maccabee, **JUST CHANGE LAW OFFICE**, 1961 Selby Avenue, St. Paul, MN 55104, for plaintiff WaterLegacy.

Paula G. Maccabee, **JUST CHANGE LAW OFFICE**, 1961 Selby Avenue, St. Paul, MN 55104; and Sara K. Van Norman, **JACOBSON,**

**MAGNUSON, ANDERSON & HALLORAN, PC**, 1295 Bandana Boulevard, Suite 335, St. Paul, MN  55108, for plaintiffs Fond du Lac Band of Lake Superior Chippewa and Grand Portage Band of Lake Superior Chippewa.

Kathryn M. Hoffman, **MINNESOTA CENTER FOR ENVIRONMENTAL ADVOCACY**, 26 East Exchange Street, Suite 206, St. Paul, MN  55101, for plaintiff Minnesota Center for Environmental Advocacy.

David A. Carson, **UNITED STATES DEPARTMENT OF JUSTICE, ENVIRONMENT AND NATURAL RESOURCES DIVISION**, 999 Eighteenth Street, South Terrace Suite 370, Denver, CO  80202, for defendants.

David L. Hatchett, **HATCHETT & HAUCK LLP**, 111 Monument Circle, Suite 301, Indianapolis, IN  46204; and David R. Oberstar, **FRYBERGER BUCHANAN SMITH & FREDERICK**, 302 West Superior Street, Suite 700, Duluth, MN  55802, for intervenor.

This is an action for declaratory judgment and injunctive relief pursuant to the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.* and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq.*   Plaintiffs in this matter are two nonprofit organizations – WaterLegacy and the Minnesota Center for Environmental Advocacy ("MCEA") – that have an interest in Minnesota's water quality generally and the Fond Du Lac and Grand Portage Bands of the Lake Superior Chippewa ("the Bands") that have an interest in Minnesota's water quality in the area at issue.  Defendants are the United States Environmental Protection Agency, the branch of the agency that reviews water quality decisions for Minnesota (Region 5), and various officers of that agency (collectively, "the EPA").  Plaintiffs challenge the EPA's December 2012 approval of a water quality standards variance for a commercial-scale iron nugget production facility

located in Hoyt Lakes, Minnesota, owned by intervenor Mesabi Nugget Delaware, LLC ("Mesabi Nugget").

On March 10, 2014, the EPA filed an unopposed motion to vacate its approval of the variance and remand the matter to the agency for further consideration.  Three days later, Mesabi Nugget moved to intervene for the limited purposes of delaying remand for thirty days to allow it to discuss the issue with the EPA and preventing the variance from being vacated during the period of remand.  Because the Court concludes that Mesabi Nugget has satisfied the requirements for intervention it will grant Mesabi Nugget's request for intervention.  The Court will also grant the EPA's unopposed motion for remand, but will remand the matter without vacating the December 2012 variance approval.

## BACKGROUND

## I.      DECEMBER 2012 VARIANCE APPROVAL

### A.      Regulatory Structure

Under the CWA, Mesabi Nugget is prohibited from discharging any pollutant into waters of the United States from a point source, such as its facility, unless the discharge is authorized by a permit under the National Pollutant Discharge Elimination System ("NPDES").  33 U.S.C. §§ 1311(a), 1342(a)(1).  The EPA has delegated to the Minnesota Pollution Control Agency ("MPCA") the authority to issue NPDES permits for discharges of pollutants within Minnesota that comply with or are more stringent than federal permit conditions.  *See In re Alexandria Lake Area Sanitary Dist. NPDES/SDS*

*Permit No. MN0040738*, 763 N.W.2d 303, 308-09 (Minn. 2009) (citing Minn. Stat. § 115.03, subd. 5; 40 C.F.R. § 123.25(a)); *see also* 33 U.S.C. § 1342(b).  An NPDES permit must include conditions that will result in compliance with state water quality standards.  33 U.S.C. § 1342(a)(1); 40 C.F.R. § 122.44(d).  The EPA is required to review and either approve or disapprove any new or revised state water quality standards promulgated by the MPCA before they can become effective.  33 U.S.C. § 1313(c); 40 C.F.R. § 131.5.  Variances authorizing discharges from individual facilities that exceed state water quality standards are considered modifications to state water quality standards, and therefore any variances granted by the MPCA must be submitted to the EPA for approval or disapproval.  *See* 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.21; *see also* 40 C.F.R. § 124.62.

### B.    Mesabi Nugget's Variance

Mesabi Nugget's iron production facility was originally governed by an NPDES permit issued in June 2005 which granted the facility variances from Minnesota water quality standards for certain types of discharges for a period of five years.  (Am. Compl. ¶¶ 76-77, Nov. 27, 2013, Docket No. 23; Administrative Record ("R.") at 654, Nov. 15, 2013, Docket No. 20.)  The 2005 variance expired on June 30, 2010, and Mesabi Nugget voluntarily ceased discharging from the facility because the MPCA had not extended its water quality variances.  (Am. Compl. ¶ 85; R. at 64.)  In June 2010 Mesabi Nugget applied to the MPCA for another variance, requesting "a continuation of the variances from the water quality standards for the 5-year term of the reissued permit."  (R. at 654.)

On January 30, 2012, the MPCA provided public notice of its intent to issue Mesabi Nugget a variance from compliance with Minnesota water quality standards. (Am. Compl. ¶ 88; R. at 80.)   Prior to and during this public comment period, all Plaintiffs in the present lawsuit submitted comments expressing opinions and concerns regarding the content and legality of the proposed variance.  (R. at 8-9, 80; Am. Comp. ¶ 117; Exhibit List, Ex. A, Mar. 20, 2014, Docket No. 38.)

On October 23, 2012, the MPCA Citizens' Board approved the MPCA's proposed findings of fact, conclusions of law, and order approving the issuance of an NPDES permit to Mesabi Nugget containing a variance from Minnesota water quality standards. (R. at 1370-90.)   The MPCA then requested approval of the variance from the EPA. (R. at 41.)  On December 27, 2012, the EPA approved the variance granted by the MPCA for Mesabi Nugget's facility through August 1, 2021.  (R. at 3-24.)

## II.     PROCEDURAL HISTORY

WaterLegacy, the MCEA, and the Bands each filed separate petitions appealing the EPA's variance approval to the EPA Environmental Appeals Board.  (Compl., Ex. B at 2-3, June 3, 2013, Docket No. 1.)  Both the EPA and Mesabi Nugget filed motions to dismiss the petitions for lack of jurisdiction.  (*Id.*, Ex. B at 3.)  On March 19, 2013, the Board granted the motions to dismiss, finding that it lacked jurisdiction to review the EPA's approval of a water quality standards variance issued pursuant to Section 303(c) of the CWA and 40 C.F.R. part 131.  (*Id.*, Ex. B at 7.)  The Board explained that review of

the EPA's decision could instead be properly sought in federal district court pursuant to the Administrative Procedure Act. (*Id.*)

On June 3, 2013 WaterLegacy filed a complaint in this Court against the EPA challenging its December 27, 2012 approval of the variance, and requesting declaratory judgment and injunctive relief. (Compl., June 3, 2013, Docket No. 1.) The Bands and the MCEA initiated separate lawsuits against the EPA seeking identical relief. (*See* Civ. No. 13-1324, Compl., June 3, 2013, Docket No. 1; Civ. No. 13-1393, Compl., June 10, 2013, Docket No. 1.) The EPA filed an answer in each of the cases disputing the allegations that its approval of the variance was arbitrary and capricious and asserting as defenses that the complaints failed to state claims upon which relief could be granted. (Answer, Aug. 27, 2013, Docket No. 13; Civ. No. 13-1324, Answer, Aug. 27, 2013, Docket No. 12; Civ. No. 13-1393, Answer, Aug. 27, 2013, Docket No. 14.)

On August 27, 2013, the three cases were consolidated. (Order, Aug. 27, 2013, Docket No. 12.) Pursuant to stipulation, the Plaintiffs filed a single amended complaint in the present action on November 27, 2013. (Order, Nov. 26, 2013, Docket No. 22; Am. Compl.) The EPA was not "required to file an amended answer in order to preserve [its] denial of all claims made by plaintiffs." (*Id.* ¶ 2.)

## A.   Consent Motion to Remand to the EPA with Vacatur

On March 10, 2014, the EPA brought an unopposed motion for a voluntary remand with vacatur. (Defs.' Unopposed Mot. for Voluntary Remand with Vacatur, Mar. 10, 2014, Docket No. 26.) In the motion the EPA explains:

> Upon further review of this matter, EPA has determined that it should reconsider the request for a variance by the Minnesota Pollution Control Agency that EPA granted in the December 27, 2012, Variance Approval Decision.  EPA therefore requests a remand of the December 27, 2012, Variance Approval Decision.  EPA intends to disapprove the variance request on remand under section 303(c) of the Clean Water Act, 33 U.S.C. § 1313(c).  Under these unique circumstances, EPA requests that the Court vacate the December 27, 2012, Variance Approval Decision before remanding the matter to EPA.

(*Id.* ¶ 3.)  The EPA notes that "[w]hile vacatur is not always appropriate when an agency requests a voluntary remand, as noted above, given EPA's intention to disapprove the variance request on remand, EPA requests that the Court vacate the December 27, 2012, Variance Approval Decision prior to remanding the matter to EPA."  (*Id.* ¶ 4.)  Finally, with respect to resolution of the pending case, the EPA states that because the motion for remand and vacatur is unopposed "it is the parties' intention to file a stipulation of dismissal under Fed. R. Civ. P. 41 after the Court grants this motion."  (*Id.* ¶ 5.)

## B.   Motion to Intervene

The day after the motion for remand was filed, Mesabi Nugget delivered a letter to United States Magistrate Judge Leo I. Brisbois indicating that its "ability to operate will be affected by EPA's motion" and requesting "that the court delay its action on the EPA's motion" for several days to allow Mesabi Nugget the opportunity to prepare "a response to the motion seeking limited relief." (Letter, Mar. 12, 2014, Docket No. 28.)

On March 13, 2014, Mesabi Nugget brought a motion for intervention and "related relief." (Mot. for Intervention & Related Relief, Mar. 13, 2014, Docket No. 29.)  In the motion, Mesabi Nugget seeks leave "to intervene in the above-entitled lawsuit for the

purpose of opposing EPA's March 10, 2014 Motion for Voluntary Remand." (*Id.* at 2.)

Mesabi Nugget also requests that the Court

> [d]elay[] any order granting EPA's Motion for Remand for a period of 30 days to allow for Mesabi to meet with defendant EPA as to the basis for the EPA's decision to allow remand of the Variance that is the subject of this litigation, after which meeting Mesabi will not object to EPA's request for this Court to remand the Variance back to EPA for further proceedings, except to object to the request to vacate the Variance.

(*Id.*) Finally, Mesabi Nugget requests that "[t]o the extent that an order remanding the Variance is issued in the future" the Court "abstain from vacating the Variance while the remand proceedings take place." (*Id.*; *see also* Mem. of Law in Supp. of Mot. to Intervene at 2, Mar. 13, 2014, Docket No. 31.)

# ANALYSIS

## I.   MOTION TO INTERVENE

Mesabi Nugget seeks to intervene as a matter of right, and in the alternative seeks permissive intervention.[1] Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right, and provides that:

> On timely motion, the court must permit anyone to intervene who:

> (1)   is given an unconditional right to intervene by a federal statute; or

---

[1] Plaintiffs oppose Mesabi Nugget's motion to intervene. (Joint Response to Mesabi Nugget's Mot. to Intervene, Mar. 20, 2014, Docket No. 37; Response to Mesabi Nugget's Mot. for Intervention & Related Relief, Mar. 20, 2014, Docket No. 35.) The EPA opposes Mesabi Nugget's request for "other relief" – namely the thirty-day delay in ordering remand and eliminating vacatur from the EPA's remand motion – but "takes no position on Mesabi's motion to intervene." (EPA's Response to Mesabi Nugget's Mot. to Intervene and For Related Relief at 3 n.1, Mar. 20, 2014, Docket No. 36.)

(2)     claims an interest relating to the property or transaction that is the
        subject of the action, and is so situated that disposing of the action
        may as a practical matter impair or impede the movant's ability to
        protect its interest, unless existing parties adequately represent that
        interest.

Fed. R. Civ. P. 24(a).   A party seeking mandatory intervention under Rule 24(a) must

establish that "(1) it has a recognized interest in the subject matter of the litigation; (2) the

interest might be impaired by the disposition of the case; and (3) the interest will not be

adequately protected by the existing parties."   *S.D. ex rel. Barnett v. U.S. Dep't of

Interior*, 317 F.3d 783, 785 (8th Cir. 2003).   Where a proposed intervenor cannot

demonstrate entitlement to intervene as of right by satisfying these criteria, a court may

permit intervention to anyone who brings a timely motion and "has a claim or defense

that shares with the main action a common question of law or fact."   Fed. R. Civ.

P. 24(b)(1)(B).   In exercising its discretion to allow permissive intervention, the Court

"must consider whether the intervention will unduly delay or prejudice the adjudication

of the original parties' rights." Fed. R. Civ. P. 24(b)(3).   A motion for intervention under

either Rule 24(a) or 24(b) "must state the grounds for intervention and be accompanied

by a pleading that sets out the claim or defense for which intervention is sought." Fed. R.

Civ. P. 24(c).   The Court must "construe Rule 24 liberally and resolve any doubts in

favor of the proposed intervenors."   *United States v. Ritchie Special Credit Invs., Ltd.*,

620 F.3d 824, 831 (8th Cir. 2010) (internal quotation marks omitted).

The parties do not dispute, and the Court finds, that Mesabi Nugget meets the

criteria for intervention as of right or permissive intervention due to its interest in the

variance and the fact that its interest in maintaining the variance is not adequately

represented by the parties to the litigation.   Plaintiffs do, however, oppose Mesabi Nugget's motion for intervention on a number of other bases, including that the motion contains fatal procedural flaws, is moot in light of the EPA's unopposed motion for remand, and is untimely.   The Court will address each of these arguments in turn.

### A.   Procedural Flaws

#### 1.   Scope of Intervention

Plaintiffs first challenge Mesabi Nugget's motion for intervention on the basis that "[i]t is not even clear whether Mesabi seeks to intervene as a plaintiff or defendant." (Joint Response to Mesabi Nugget's Mot. to Intervene at 6, Mar. 20, 2014, Docket No. 37.)   Courts have "recognized that the resolution of a Rule 24 motion requires flexibility" and engage in "a practical analysis of the facts and circumstances of each case" even where a motion to intervene is not "conventional" and does not fit neatly into the contours of "the analytical framework established by Rule 24."   *United States v. Petters*, Civ. No. 08-5348, 2008 WL 5234527, at *2 (D. Minn. Dec. 12, 2008) (internal quotation marks omitted) (granting a motion to intervene for the limited purpose of lifting the stay of litigation because "a practical, commonsense application of Rule 24 suggests intervention for th[at] limited purpose . . . is appropriate here").   In keeping with these principles, courts have consistently allowed intervention for a limited purpose, such as intervention to challenge a protective order, *see Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000) (holding that where the district court sealed a portion of its proceedings and records "the Newspaper should have been allowed to intervene for the limited

purpose of challenging the district court's order"); *In re Baycol Prods. Litig.*, 214 F.R.D. 542, 543-44 (D. Minn. 2003) (allowing intervention for limited purpose of seeking modification of a protective order), to object to the production of certain discovery, *see Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 17 (E.D.N.Y. 1996) (considering motions to intervene "for the limited purpose" of objecting to an order regarding the discovery of certain documents), or to challenge a settlement, *United States v. Carpenter*, 298 F.3d 1122, 1125-26 (9th Cir. 2002).

Here, Mesabi Nugget clearly seeks intervention for a limited purpose and therefore need not specify whether it seeks intervention as a plaintiff or defendant. In other words, Mesabi Nugget does not wish to file claims, defend against the allegations in the amended complaint, or engage with the merits of the lawsuit. Instead, Mesabi Nugget seeks to intervene for the limited purpose of addressing issues that are ancillary to the merits of the lawsuit. Mesabi Nugget does not dispute that the case – which challenges the propriety of the EPA's December 27, 2012 approval of the variance – should be remanded for reconsideration by the EPA, but brings its motion to intervene solely to delay entry of the unopposed motion for remand for a period of thirty days and to challenge the collateral issue of whether the variance should be vacated during the pendency of the remand proceedings. Plaintiffs have identified, and the Court has found, no authority that would prevent Mesabi Nugget from intervening for the limited purposes it has identified. Instead, applying a flexible and commonsense understanding of Rule 24, the Court concludes that Mesabi Nugget's failure to seek intervention as either a party plaintiff or party defendant does not provide a basis to deny its motion.

## 2.      Failure to Include Pleading

Relatedly, Plaintiffs argue that Mesabi Nugget's motion to intervene is improper under Rule 24 because it fails to include a pleading.  Plaintiffs contend that "before the Court can consider the merits, Mesabi must conform its Motion by filing a pleading and then re-noticing the parties."  (Joint Response to Mesabi Nugget's Mot. to Intervene at 6.)

Rule 24 requires that a motion for intervention "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).  But the Eighth Circuit has held that failure to comply with this requirement is not fatal to a motion for intervention where a proposed intervenor submits "a statement of interest explaining why it seeks intervention." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009).   Such a statement of interests satisfies Rule 24's requirement of an accompanying pleading if "it provides sufficient notice to the court and the parties of [the intervenor]'s interests." *Id.*

Here, the Court concludes that Mesabi Nugget's brief in support of its motion to intervene provides sufficient notice to the Court and the parties of its interests and the basis for its motion to satisfy Rule 24(c).   In its brief Mesabi Nugget has clearly identified its interest in the variance and its rationale for seeking a thirty-day meet and confer period and challenging the vacatur of the variance.   Indeed, given Mesabi Nugget's request for limited intervention, which does not seek to challenge the allegations in the Amended Complaint or assert independent claims, the briefing submitted in connection with Mesabi Nugget's motion provides far more relevant

information to the Court and the parties than would a formal pleading.  Furthermore, the

Court notes that Plaintiffs do not seek denial of Mesabi Nugget's motion due to the

failure to file a pleading, instead Plaintiffs merely request refiling of the instant motion.

Given the important timing concerns of the remand identified by Plaintiffs, the Court

concludes that requiring Mesabi Nugget to refile its motion would elevate form over

substance and merely serve to delay the relief sought by Plaintiffs.  Accordingly, because

Mesabi Nugget's brief meets the standards of Rule 24(c)'s pleading requirement, by

apprising the Court and the parties of the purpose and scope of its proposed intervention,

the Court will consider the motion on the merits, despite the lack of a formal pleading.

### 3.   Arguments Responsive to Motion for Remand

Plaintiffs also contend that Mesabi Nugget's motion is improper because it offers

argumentation that is responsive to the unopposed motion for remand, arguing that "[a]

motion to intervene can only deal with whether a party is entitled to appear in a case" and

"Mesabi is not entitled to proffer a response to the Unopposed Motion until and unless it

is granted intervention."  (Joint Response to Mesabi Nugget's Mot. to Intervene at 6.)

Although Plaintiffs do not contend that this "impermissible" inclusion of a response to

the motion for remand is a basis to deny Mesabi Nugget's motion, they request that the

motion be "conformed and the parties re-noticed" before the Court hears the motion.  (*Id.*

at 7.)

Plaintiffs have cited, and the Court has found, no authority for the proposition that

a proposed intervenor cannot include in its motion for intervention arguments against a

pending motion that the intervenor would make if intervention was allowed.   Indeed, where, as here, Mesabi Nugget seeks intervention for the limited purpose of challenging a pending motion it would make little sense for its motion to intervene **not** to include its position with respect to the pending motion.   In other words, Mesabi Nugget's arguments about the motion for remand are essential to understanding the basis for its motion for intervention, and are therefore not improper.   Finally, as explained more fully below, the parties' interest in the expeditious remand of this case would not be furthered by requiring Mesabi Nugget to refile its motion for intervention.   Although Plaintiffs are correct that Mesabi Nugget has no right to have its responses to the motion for remand considered if its motion for intervention is denied, the Court has identified no procedural deficiency in Mesabi Nugget providing its arguments regarding the motion for remand to the Court.   *See Sackman*, 167 F.R.D. at 20 ("Further, in an effort to avoid delaying these proceedings the putative intervenors have already filed their objections, the consideration of which are contingent upon the Court's decision with respect to these motions.").   Therefore, the Court will consider Mesabi Nugget's motion to intervene on the merits even though its briefing contains substantive arguments regarding the motion for remand.[2]

---

[2] Plaintiffs and the EPA also object to Mesabi Nugget setting a hearing on its motion to intervene in front of United States Magistrate Judge Leo I. Brisbois.   (*See* Notice of Hearing on Mot., Mar. 13, 2014, Docket No. 30.)   Plaintiffs contend that although motions to intervene are nondispositive matters properly heard by magistrate judges, Mesabi Nugget's motion also seeks denial of vacatur "[s]o, via these backdoor means, Mesabi has impermissibly set before a magistrate judge a dispositive-motion hearing that no other party wanted – and Mesabi's not even a party to the case yet."   (Joint Response to Mesabi Nugget's Mot. to Intervene at 7; *see*

(Footnote continued on next page.)

### B.      Mootness

Plaintiffs next argue that the motion to intervene must be denied because, in light of the filing of the unopposed motion for remand, no case or controversy exists. Specifically Plaintiffs argue "[n]ow that the EPA has formally changed course, the Court lacks jurisdiction to adjudicate the 'present or future legality' of the Variance Decision because there is no longer a case or controversy between the existing parties."  (Joint Response to Mesabi Nugget's Mot. to Intervene at 11.)

"'The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy.'"  *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  If no actual, ongoing case or controversy exists "the case is moot and the federal court no longer has jurisdiction to hear it."  *Id.* (internal quotation marks omitted).  A motion to intervene is generally rendered moot where the action in which the litigant seeks to intervene has been dismissed.  *See W. Coast Seafood Processors Ass'n v. Natural Resource Defense Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011); *cf. Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012) (concluding that appeal from denial of a motion to

_____

(Footnote continued.)

*also* EPA's Response to Mesabi Nugget's Mot. to Intervene and For Related Relief at 2 ("Because Mesabi's motion to intervene is intertwined with its motion for 'related relief' . . . this matter should be heard by Judge Tunheim in its entirety.").)  Because this Court, not the Magistrate Judge, heard argument on the motion to intervene and for related relief and took that motion and the unopposed motion for remand under advisement, (Ct. Minutes, May 7, 2014, Docket No. 49) the parties' objections to Mesabi Nugget's motion on this basis are moot.

intervene was not moot where "the case remains pending, and the parties have submitted another settlement for the district judge's approval").

Because the present case remained open when Mesabi Nugget filed its motion to intervene, neither this case, nor the motion, is moot. Although the EPA had filed an unopposed motion requesting remand and vacatur prior to the filing of the motion for intervention, the Court had not yet ruled on that motion. Therefore, currently before the Court are several cases or controversies that are sufficient to satisfy the jurisdictional requirements of Article III. First, by filing a motion for intervention prior to the entry of final judgment in the case, Mesabi Nugget put at issue "the merits and the propriety of intervention." *Robert F. Booth Trust*, 687 F.3d at 318. Plaintiffs oppose Mesabi Nugget's motion for intervention, indicating that the issues raised in that motion "are live issues." *Id.* Second, even if Mesabi Nugget had not filed a motion for intervention, the propriety of remand and vacatur remains an issue before the Court. Contrary to Plaintiffs' suggestion, the fact that they do not oppose the EPA's motion for remand does not mean that the Court is bound by the parties' agreement as to the propriety of remand and vacatur. *See Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417-18 (6th Cir. 2004) (explaining that although "courts typically grant an agency's motion to remand a case" a court may refuse an agency's request for remand if the "request is frivolous or in bad faith" or if does not occur in a reasonable period of

time (internal quotation marks omitted));[3] *see also Natural Resources Defense Council v. U.S. E.P.A.*, 676 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) ("Where an agency action is remanded for further proceedings, the determination of whether or not also to vacate the agency action is left **to the court's discretion**." (emphasis added)).  Therefore, despite the filing of the unopposed motion for remand, a live case or controversy remains for the Court to decide.

As support for its position that the case is moot, Plaintiffs rely upon *Save Greers Ferry Lake, Inc. v. Dep't of Defense*, 255 F.3d 498, 501 (8th Cir. 2001).  In *Save Greers*, the Eighth Circuit held that no case or controversy existed with respect to the validity of a shoreline management plan promulgated by the United States Corps of Engineers because the Corps had since cancelled and withdrawn the shoreline management plan. *Id.* at 500-01.  Because a portion of the case challenged the validity of a plan which was no longer in force, the court held that with respect to that issue, "there is no longer a case or controversy for the courts to adjudicate regarding the present or future validity of the [shoreline management plan]." *Id.* at 501.  But the present case is distinguishable from *Save Greers*.  Unlike the Corps in *Save Greers* here, the EPA has not yet taken any action to cancel or vacate the variance.  Therefore, the present or future validity of the variance can be adjudicated by a court.  More importantly, *Save Greers* speaks only to the issue of mootness when an agency has withdrawn or removed the challenged agency action and

---

[3] The Court does not believe that the EPA's request for remand here is frivolous or in bad faith; it cites *Mineta* only for the proposition that, even where the parties' agree, a live case or controversy remains and the Court has jurisdiction to assess the propriety of an agency's request for remand.

says nothing about whether Mesabi Nugget's motion to intervene, which presents its own case or controversy (the propriety of intervention), and which, incidentally, does not seek to challenge the present or future validity of the variance, is moot. Therefore, the Court will decline to deny Mesabi Nugget's motion on the basis of mootness.

### C.    Timeliness

Both motions for intervention as of right and for permissive intervention must be timely, *see* Fed. R. Civ. P. 24, and "the timeliness of a motion to intervene is a threshold issue," *Ritchie Special Credit Invs., Ltd.*, 620 F.3d at 832. Whether a motion to intervene is timely "is determined by considering all the circumstances of the case" and "[n]o ironclad rules govern this determination." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993). The Eighth Circuit has, however, articulated several factors that the Court should specifically consider when making the determination: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *ACLU of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1094 (8th Cir. 2011) (internal quotation marks omitted).

### 1.    Extent Litigation Has Progressed

Plaintiffs' primary argument regarding timeliness is that Mesabi Nugget's motion to intervene is untimely because the parties have "agreed to a full resolution" of the case, in the form of the unopposed motion for remand, making this "the **final** stage of

litigation." (Joint Response to Mesabi Nugget's Mot. to Intervene at 13-14 (emphasis in original).) The factor examining the extent of progress in the litigation typically weighs against finding a motion for intervention to be timely where the motion is brought after the "litigation is nearly wrapped up." *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (8th Cir. 2008). But "absolute measures of timeliness should be ignored," *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994), and "nothing in Rule 24(a) precludes postjudgment or even post-appeal intervention," *Tweedle*, 527 F.3d at 671. Additionally, in analyzing the extent to which litigation has progressed courts consider not only the current stage of the litigation but also what has occurred in the litigation before the filing of the motion to intervene. *See Stupak-Thrall v. Glickman*, 226 F.3d 467, 472, 475 (6th Cir. 2000); *see also Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) ("While four years had elapsed before the Seipels filed their motion to intervene, the critical inquiry is: what proceedings of substance on the merits have occurred?"). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Espy*, 18 F.3d at 1205.

Here, although the parties to the litigation have reached a resolution in the form of a remand, the parties have engaged in no discovery or motion practice and no proceedings regarding the merits of the litigation have occurred. *See Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 786 (6th Cir. 2004) (reversing determination that motion to intervene was untimely even though the "action was commenced in July 1998, had progressed to the point of a tentative settlement, and was

subject to a conditional dismissal order by the time the proposed intervenors filed their motion on June 4, 2001" because little progress had been made "in discovery and motion practice" where "after the City's motion to dismiss was denied, although the discovery period had expired, little or no energy was devoted to discovery before the parties embarked on settlement negotiations").  After Plaintiffs filed their amended complaint in November 2013 a pretrial scheduling order was entered in December 2013.  Thereafter, no action, other than private settlement discussions, occurred prior to the filing of the motion for remand on March 10, 2014 and Mesabi Nugget's motion to intervene on March 13, 2014.  This is therefore not a case where extensive litigation has occurred suggesting that the parties would be prejudiced by intervention.  *Cf. Tarek ibn Ziyad Academy*, 643 F.3d at 1094 (affirming the district court's denial of a motion to intervene as untimely where "the fact that extensive motion practice and some discovery had occurred during the parents' delay in moving to intervene would prejudice the existing parties"); *Clarke v. Baptist Mem'l Healthcare Corp.*, 264 F.R.D. 375, 379 (W.D. Tenn. 2009) (finding that the extent of litigation factor weighed against a finding of timeliness where "several important litigation milestones have passed" between the filing of the complaint and the motion to intervene, including the court's denial of a motion to dismiss, passing of the deadline to join additional parties, the conclusion of class certification discovery, and the court's denial of a motion for class certification).

Furthermore, where, as here intervention is sought for a limited purpose, courts have analyzed the issue of timeliness narrowly, as the period of time elapsing between the event giving rise to the limited intervention and the motion to intervene.  *See*

*Sackman*, 167 F.R.D. at 20 (noting that because "these Rule 24 motions are for the limited purpose of objecting" to a discovery order and were filed ten days after the entry of that order "any delay is negligible"); *see also In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 315 (D. Conn. 2009) ("In cases where parties have sought intervention for the limited purpose of modifying a protective order, the requirement of timeliness is quite broad. Where a party seeks intervention to modify a protective order and not to participate on the merits, courts have permitted intervention even where the parties to the underlying litigation have settled their dispute." (citation omitted)). As explained above, Mesabi Nugget seeks intervention for the limited purpose of challenging the type of remand that occurs (with or without vacatur), and does not seek to intervene for purposes of arguing the merits of the case. Mesabi Nugget filed its motion to intervene only three days after the filing of the remand motion to which it objects. Therefore, the Court concludes that, although the parties have reached tentative resolution of the case, the extent of progress in the litigation weighs only slightly against intervention.

### 2.    Mesabi Nugget's Knowledge and Reason for Delay

It is undisputed that Mesabi Nugget had knowledge of this very highly publicized litigation as soon as, or shortly after, it was filed in June 2013. (*See, e.g.* Exhibit List, Exs. B-C (news coverage of the lawsuit).) It is also undisputed that Mesabi Nugget has been aware of the position of the Plaintiffs in this matter for several years, as they participated actively in opposing the approval of the variance sought in June 2010. But

Mesabi Nugget argues that it did not know or have reason to know that the EPA would cease to defend its December 2012 approval of the variance until the motion for remand was filed.  Up until that point – including before the EPA Environmental Appeals Board and in its answers to the Plaintiffs' complaints in the present case – the EPA's position was that it had properly approved Mesabi Nugget's variance.  Therefore, Mesabi Nugget would not have known prior to the filing of the motion for remand that remand of the variance decision would be with vacatur.  Because Mesabi Nugget seeks to intervene for the limited purpose of challenging the type of remand, the Court concludes that it did not have a reason to know that its interests were not being represented by the EPA until the motion for remand was filed.  *See Midwest Realty Mgmt. Co.*, 93 F. App'x at 787-88 ("The proposed intervenors undoubtedly knew that this litigation could affect their legal interests from the beginning.  However, it was not until there was reason to believe their interests were not being adequately represented by the City that they would have been alerted to the need to seek intervention.  The mere pendency of settlement negotiations cannot be deemed to trigger such awareness.  Only notice of objectionable terms in a proposed settlement will ordinarily suffice." (citation omitted)); *see also Carpenter*, 298 F.3d at 1125 ("[U]ntil parties have notice that the government may not be representing their interests, parties are entitled to rely on the presumption that the government is representing their interests.").  Therefore, the Court finds that this factor weighs in favor of intervention.

### 3.   Prejudice

Finally, Plaintiffs argue that they will be prejudiced by intervention because "the existing parties will be subjected to litigation costs and burdensome delays . . . all so Mesabi can block the case's resolution" and that the parties would be prejudiced by the Court's refusal "to allow the EPA to voluntarily reconsider the Variance Decision." (Joint Response to Mesabi Nugget's Mot. to Intervene at 15, 16.)   But Plaintiffs' arguments regarding prejudice misconstrue the scope and purpose of Mesabi Nugget's motion for intervention.   It is true that courts have denied motions to intervene as untimely where the motion threatened to jeopardize the parties' settlement agreement. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) ("In the past, we have affirmed the denial of motions to intervene in cases where granting intervention might have compromised long-litigated settlement agreements or delicate consent decrees."); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) ("[T]he government and the settling defendants would have been prejudiced had BAII been permitted to intervene at such a late stage in the litigation since they would have had to begin negotiations again from scratch."); *Clarke*, 264 F.R.D. at 381 (finding prejudice where the addition of the proposed intervenor "would serve to derail this case from its current track to trial and/or resolution by summary judgment" and would "require the Defendants to start from scratch").   Here, however, Mesabi Nugget's intervention does not threaten to undo the parties' agreement to remand the variance approval to the EPA. The intervention will not cause the litigation to continue, and therefore will not subject the parties to continued litigation costs or require them to begin settlement negotiations

anew.  Instead, Mesabi Nugget agrees that this matter should be remanded to the EPA and merely seeks to leave the variance in place during the pendency of the remand.  The parties have at no point indicated that vacatur is an integral part of their agreement for the disposition of this case or that if the Court were to remand without vacatur that the parties would choose instead to continuing litigating the case in this forum.  Indeed, as explained more fully below, the EPA has represented to the Court that its proposed action on remand will be taken swiftly, suggesting that whether the variance is vacated or not during the pendency of remand will have little practical consequence.  Accordingly, the Court concludes that prejudice suffered by the existing parties, if any, will be minimal, and therefore does not weigh against intervention.  Having considered all of the circumstances of the case, the Court concludes that Mesabi Nugget's motion is timely and will grant its motion for intervention for the limited purpose of challenging the vacatur of the variance during the pendency of remand.[4]  Because the Court finds that

---

[4] Although Mesabi Nugget's motion initially sought a thirty-day period in which to meet and confer with the EPA prior to the Court entering an order remanding the matter, Mesabi Nugget represented at oral argument that this thirty-day delay is no longer necessary.  At the time Mesabi Nugget filed its motion for intervention and related relief, its facility was actively discharging pursuant to its NPDES permit.  Therefore, Mesabi Nugget requested the additional time to allow it to prepare for the cessation of discharge allowed under the variance.  Pursuant to the terms of its permit, however, the facility does not discharge between April 1 and September 1 at the earliest.  Consequently, the concern about immediately ceasing discharge in the event of remand and vacatur – and the reason for the thirty-day meeting and confer period – is no longer present.  Furthermore, the EPA represented at oral argument that it would be unable to share with Mesabi Nugget the reasons for its change of opinion regarding the variance approval decision as that rationale is protected by attorney client privilege, and will be disclosed to everyone – including Plaintiffs and Mesabi Nugget – when the EPA issues its decision reversing the variance.  Therefore, to the extent Mesabi Nugget is continuing to request a thirty-day delay in the entry of this Order remanding the case to the EPA for the purposes of learning the reasons for the EPA's decision, the Court denies the request as futile.  In light of the representations of the

(Footnote continued on next page.)

intervention is proper, it will go on to consider the challenge raised by Mesabi Nugget to the motion for remand with vacatur.

## II.      UNOPPOSED MOTION FOR REMAND WITH VACATUR

Neither Plaintiffs nor Mesabi Nugget dispute that remand to the EPA for reconsideration of the variance approval is appropriate in this case, and the Court has found no evidence of bad faith or untimeliness on the part of the agency that would render remand inappropriate. *See Citizens Against Pellissippi Parkway Extension, Inc.*, 375 F.3d at 417-18. Mesabi Nugget does, however, challenge that such remand be with vacatur as requested in the EPA's motion.

Even where the Court orders remand, it retains discretion to determine whether the agency action or decision should remain in effect while the agency seeks to correct the action or decision. *See Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005). Whether an agency's decision should be vacated on remand "depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002) (internal quotation marks omitted).

_____
(Footnote continued.)

parties, an additional thirty-day delay in remanding this matter would serve no purpose, and therefore the Court will not delay in entering this Order.

As an initial matter, the Court notes that there is a split in the case law regarding whether a court has the authority to order vacatur during the pendency of remand where, as here, a court has made no determination on the merits of the agency's decision. *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010) (concluding that because the court did not make "a determination of the merits as a result of the federal defendants' confession of legal error" it was without "the authority to grant the federal defendants' request for vacatur"). *But see Center For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241-43 (D. Colo. 2011) (noting that courts may grant vacatur even where they have not considered the agency action on the merits). As explained below, the fact that the Court has not considered the variance approval on the merits in even the most general sense is certainly relevant to a determination of vacatur. However, for purposes of this Order, the Court will assume, without deciding, that it has the authority to vacate the EPA's variance approval, because it concludes that vacatur is not warranted under these circumstances.

With respect to the first prong of the vacatur inquiry – the seriousness of the deficiencies in the agency action – vacatur is appropriate where "the Court has significant doubts as to 'whether the agency chose correctly'" in taking the action. *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 185 (D.D.C. 2008) (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)). Courts have vacated, for example "when the agency has not responded to empirical data or to an argument inconsistent with its conclusion." *Comcast Corp. v. F.C.C.*, 579 F.3d 1, 8 (D.C. Cir. 2009); *see also Am. Petroleum Inst.*, 541 F. Supp. 2d at

185 (remanding with vacatur where "the deficiencies in EPA's explanation strongly suggest that the agency failed to engage in reasoned decisionmaking"). Even where a court has not expressly considered a decision on the merits, but instead remands an agency decision at the request of the parties, the parties can still provide information to the court regarding the propriety of the remand. *See Center For Native Ecosystems*, 795 F. Supp. 2d at 1242 (noting that courts may grant vacatur even where they have not considered the agency action on the merits, but nonetheless examining the contentions of the parties regarding the deficiencies with the remanded rule in determining whether vacatur was appropriate).

Here, although the EPA has indicated that it intends to disapprove the variance request on remand, it has proffered no explanations for its action nor has it provided the Court with any reasons why its original approval of the variance was not the product of reasoned decisionmaking, or was otherwise arbitrary and capricious. *Frito-Lay, Inc. v. U.S. Dep't of Labor*, Civ. No. 12-1747, 2014 WL 2027525, at *8 (N.D. Tex. Feb. 11, 2014) (noting that "[v]acatur is rarely mentioned in cases granting a motion for voluntary remand" and that "[w]ithout a finding that the Final Order is arbitrary and capricious, or otherwise unlawful, a ruling vacating or setting aside the Final Order is premature"). Therefore the Court is unable to conclude that it has significant doubts as to whether the EPA chose correctly when it initially approved the variance, and this factor weighs against vacatur.

With respect to the second prong of the vacatur inquiry – the disruptive consequences of vacatur – the Court finds that this factor also weighs against vacatur.

The EPA has represented to the Court that vacatur of the variance approval would have no effect on Mesabi Nugget's current operations, as it does not currently discharge under its existing permit until at least September 1, and would, in any case, be shielded from liability for actions taken that are consistent with its existing permit until the EPA actually reverses its approval of the variance and a new permit is issued.  Courts have typically declined to remand with vacatur where vacatur would not actually have the effect of undoing the agency action.  *See Sugar Cane Growers*, 289 F.3d at 97-98 (remanding without vacatur when farmers had already plowed their crops in response to the administrative rule in question).  Until the EPA reverses the approval of the variance and a new permit is issued, vacatur would have no discernable effect, and the Court will therefore decline to order it.  Additionally, the Court notes that the EPA has stated that it "intends to make its decision on remand within 30 days after the Court remands this matter to the EPA."  (EPA's Response to Mesabi Nugget's Mot. to Intervene and for Related Relief at 6.)  Thus, the Court is not presented with a situation where, in the absence of vacatur, an erroneous rule will stay in place for a long period of time during remand and adversely affect the environment.  *See Natural Resources Defense Council v. U.S. E.P.A.*, 676 F. Supp. 2d at 316 (vacating after determining that the pesticide at issue "was not lawfully registered" and finding it "more appropriate to vacate the registration" which would result in the removal of the pesticide from the market during remand).  Because the Court has no basis upon which to assess the deficiencies of the EPA's variance approval and vacatur will not serve to change the status quo during the pendency of the remand, the Court will grant the EPA's motion for remand, but will deny its

request for vacatur.  The Court notes that this denial is without prejudice, and should the circumstances of remand become different than currently represented by the EPA, any party is entitled to reapply to the Court for vacation of the variance approval.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants' Unopposed Motion for a Voluntary Remand With Vacatur [Docket No. 26] is **GRANTED in part** and **DENIED in part**.

   a.     The motion is **GRANTED** only to the extent it seeks voluntary remand of this matter to the EPA.

   b.     The motion is **DENIED** to the extent it seeks vacatur of the December 27, 2012, Variance Approval Decision during the pendency of the remand.  The denial of vacatur is **without prejudice** and any party, including intervenor-Mesabi Nugget, may move for vacatur should the circumstances and timing of remand become different than currently represented by Defendants and therefore warrant such relief.

2.     Mesabi Nugget's Motion for Intervention and Related Relief [Docket No. 29] is **GRANTED in part** and **DENIED in part** as follows:

   a.     The motion is **GRANTED** to the extent it seeks intervention for the limited purpose of opposing the March 10, 2014 Unopposed Motion for a Voluntary Remand With Vacatur.

      b.     The request that the remand to the EPA be without vacatur is **GRANTED**.

      c.     The motion is **DENIED** to the extent it seeks a thirty-day delay prior to the entry of this Order.

DATED:  June 2, 2014
at Minneapolis, Minnesota.

                                     s/ John R. Tunheim

                                  JOHN R. TUNHEIM
                          United States District Judge